IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARRIE BROUGHTON-IRVING, BERNARD NEVEL, ETTA NEVEL, ERSKINE CARTWRIGHT, PATRICK MURPHY, CHARLES BARBER, BOB ANDERS, MARILYN ANDERS, and TERRY KICKERT, Each Individually and Derivatively on Behalf of HERITAGE COMMUNITY BANCORPORATION, INC. | ) ) ) ) ) ) ) ) | |
| *Plaintiff*, | ) | |
| v. | ) ) | No. 09 CV 7979 |
| JOHN M. SAPHIR, IRA S. NATHAN, JERRY C. BRUCER, STEPHEN FAYDASH, PATRICK G. FANNING, AND MARY MILLS, | ) ) ) ) | Honorable David H. Coar |
| *Defendants*, | ) ) | |
| HERITAGE COMMUNITY BANCORPORATION, INC., an Illinois Corporation, | ) ) ) | |
| *Nominal Defendant*, | ) ) | |
| and | ) ) | |
| FEDERAL DEPOSIT INSURANCE CORORATION, as Receiver of Heritage Community Bank, | ) ) ) ) ) | |
| *Intervenor*. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Carrie Broughton-Irving, Bernard Nevel, Etta Nevel, Erskine Cartwright, Patrick Murphy, Charles Barber, Bob Anders, Marilyn Anders, and Terry Kickert (collectively "Plaintiffs"), individually and on behalf of Heritage Community Bancorporation, Inc., bring an amended complaint against Defendants John Saphir, Ira Nathan, Jerry Brucer, Stephen Faydash, Patrick Fanning, Mary Mills (collectively "Defendants"), individually and in their capacity as

1

directors and officers of Heritage Community Bancorporation, Inc., for breach of fiduciary duty, gross management, waste of corporate assets, fraud breach of contract, fraudulent misrepresentation, negligent misrepresentation, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*

Before the Court is Plaintiffs' amended motion to remand [64] (amending motion [18]), and motions to dismiss filed by Mills [61], Nathan [67], Brucer [73], Fanning [79], Saphir [70], Faydash [114], and the FDIC [75]. For the reasons stated below, Plaintiffs' motion to remand is GRANTED. Defendants' and the FDIC's motions to dismiss are DENIED as MOOT.

**I.      Background**

During the relevant period of time, Heritage Community Bank ("Heritage") was allegedly under the direction, control, and supervision of Defendants, in their capacities as directors and officers of the bank's holding company, Heritage Community Bancorporation ("Bancorp"). Defendants' improper oversight allegedly exposed Heritage to excessively risky loans. Plaintiffs allege that the resulting lending practices substantially violated lending standards and risk management controls recognized throughout the industry.

Additionally, Defendants allegedly took out a $4 million line of credit to purchase 6,100 shares of Bancorp stock at $700 a share – twice the actual book value – from Gerald Stewart in 2006. Plaintiffs did not receive prior notice of the so-called "Stewart Transaction," which they allege was a misappropriation of Bancorp funds. Plaintiff Broughton-Irving subsequently sought to sell her shares to Heritage Bancorp for a similar price, to no avail.

Throughout 2008, Defendant Saphir allegedly made false and misleading statements to certain of Plaintiffs regarding Heritage's financial status and risk exposure, in accordance with

the 2007 Bancorp Annual Report. On February 14, 2008, Bancorp shareholders were given the opportunity to purchase 2,902 shares of stock at $352.00 a share. Allegedly relying on Saphir's false representations and the 2007 Annual Report, Barber, Mr. Nevel, Ms. Nevel, and Murphy purchased hundreds of shares at this price. The remaining Plaintiffs, allegedly relying on the same misinformation, held on to their shares.

In the fall of 2008, the FDIC and Illinois Department of Financial and Professional Regulation ("IDFPR") issued a Cease and Desist Order, commanding Heritage to refrain from unsafe banking practices and violations of laws and regulations. Heritage entered into a consent agreement, amended its loan policies, and created a plan to reduce its concentration of credit in construction and development loans, speculative real estate loans, and other commercial real estate. Nevertheless, in a summary sent to shareholders in January 2009, Bancorp recorded a loss of $21,813,987.00 for the 2008 fiscal year, caused primarily by loan losses. On February 27, 2009, the Illinois Division of Banking, a part of the IDFPR, closed Heritage. The FDIC was appointed receiver. Heritage's assets were later purchased by MB Financial. Plaintiffs were left with worthless shares of Bancorp, now a holding company deprived of its sole asset.

## II.     Standard of Review

### A. Motion to Remand

If a federal district court has original jurisdiction over the matter, a defendant can remove a case from state court to the district court. 28 U.S.C. § 1441; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The defendant has the burden of establishing federal jurisdiction once it has been fairly cast into doubt. *Brill v. Countrywide Home Loans, Inc*., 427 F.3d 446, 447 (7th Cir. 2005). When ruling on a motion to remand, "federal courts should interpret the removal

statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Centers, Inc.*, 57 F.3d 752, 758 (7th Cir. 2009) (citing *Doe v. Allied-Signal Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)).

### B. Motion to Dismiss

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of a complaint. *Weiler v. Household Finance Corp.*, 101 F.3d 519, 524 n. 1 (7th Cir.1996). To survive the motion, a complaint need only describe the claim in sufficient detail to give the defendant fair notice of the claim and its basis. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, (2007). A plaintiff's factual allegations must suggest a plausible, rather than merely speculative, entitlement to relief. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic*, 550 U.S. at 555. In ruling on a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accepting as true the well-pleaded allegations, and drawing all reasonable inferences in plaintiff's favor. *Tamayo*, 526 F.3d at 1081.

### III. Analysis

### A. Procedural Posture

On November 5, 2009, Plaintiffs filed a complaint in the Circuit Court of Cook County, seeking relief for the above conduct. Defendant Saphir filed a notice of removal on December 23, 2009, whereupon the case came before this Court. Saphir argued that, under the Financial Institution Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Plaintiffs' claims belonged exclusively to the Federal Deposit Insurance Corporation ("FDIC").

The FIRREA provides that:

> The [FDIC] shall, as conservator or receiver, and by operation of law, succeed to--
>
> (i) all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution . . . .

12 U.S.C. § 1821(d)(2)(A); *see also FDIC v. American Casualty Co.,* 998 F.2d 404, 406 (7th Cir. 1993) ("As the receiver, the FDIC possesses all the rights of the Bank's shareholders, including the right to sue directors and officers."). According to Saphir, the issue of "the FDIC's exclusive standing under FIRREA to assert the claims plaintiffs have alleged in the Shareholder Derivative Complaint" constituted a federal question that justified removal under 28 U.S.C. § 1331.

Plaintiffs filed a motion to remand on January 15, 2010. On January 19, the FDIC moved to intervene, citing its interest in protecting its exclusive authority to bring derivative claims on behalf of Heritage Bank. This Court granted the motion on January 21. Plaintiffs filed a first amended complaint on February 11, 2010, and moved to amend their motion to remand on February 25, 2010.

### B. Motions to Remand and Dismiss

The parties' arguments for dismissal and remand overlap substantially. Plaintiffs generally assert that their complaint only alleges state law claims. Plaintiffs further argue that they should be permitted to proceed in either court because one of the harms alleged – the denial of the opportunity to sell or refuse shares in an informed manner due to Defendants' misrepresentations – can be distinguished from FDIC claims because it constitutes a "direct harm" to either Bancorp or individual Plaintiffs, as opposed to a "derivative harm" to Heritage.

5

Finally, Plaintiffs make much of the fact that the FDIC was appointed receiver of Heritage, while Plaintiff's claims are aimed at the directors and officers of Bancorp.

As Defendants and the FDIC make abundantly clear, most of Plaintiffs' attempts to distinguish their claims from the shareholder derivative claims now under the FDIC's exclusive domain fall flat. *See Hamilton v. Conley*, 827 N.E.2d 949, 955 (Ill. App. Ct. 2005) (derivative claim under Illinois law is one in which "the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his or her corporate shares . . . ."); *Neathery v. Winfield*, No. 09-cv-631-JPG-DGW, 2010 U.S. Dist. LEXIS 16852, at *11 (S.D. Ill. Feb. 25, 2010) ("[I]n order to survive the motion to dismiss, [plaintiff] must show that he suffered some sort of individual injury that is distinguishable from the indirect injury of devaluation of stock"); *Courtney v. Halleran*, 485 F.3d 942, 950 (7th Cir. 2007) ("[A] 'direct injury' for these purposes is an 'injury independent of the firm's fate.'"); *Crocker v. Federal Deposit Ins. Corp.*, 826 F.2d 347, 351-52 (5th Cir. 1987). In addition, the FDIC notes that addressing Defendants as directors and officers of Bancorp does not alter the substance of Plaintiffs' claims, which largely condemn Defendants for their mismanagement of Heritage, rather than their mismanagement of the holding company. *See Brown v. Tenney*, 532 N.E.2d 230, 231 (1988) ("A double derivative suit is one wherein a shareholder of a parent or holding company seeks to enforce a right belonging to a subsidiary of the parent or holding company."); *Lubin v. Skow*, 382 Fed. Appx. 866, *3-4 (11th Cir. 2010) (where plaintiffs failed to allege "harm to the Holding Company that is distinct from the harm the Holding Company suffered when its investment in the Bank soured, the Complaint states no claim for which [plaintiffs] may recover."); *Palmer v. Metropolitan Bancorporation*, Nos. 82-141-Civ-T-WC, 82-565-Civ-T-WC, 1983 U.S. Dist. LEXIS 16758, at *2-3 (M.D. Fla. May 23, 1983) (the FDIC

possesses "the exclusive right to assert claims against officers and directors of the Bank or holding company concerning errors or omissions in performing duties owed to the Bank."). Still, these matters have no bearing on whether this Court has original jurisdiction over the instant case.

On that point, the FDIC and Defendants contend that the FDIC's intervention confers subject matter jurisdiction over this case. FIRREA states that "all suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to rise under the laws of the United States." 12 U.S.C. § 1819(b)(2)(A). The FDIC urges this Court to adopt the Fifth Circuit's interpretation of this provision. In *Heaton v. Monogram Credit Card Bank of Georgia*, the Fifth Circuit held that intervention by the FDIC was enough to confer "instant subject matter jurisdiction" over a case, even where the FDIC moved to intervene after the case was removed, and no other independent basis for jurisdiction existed. *Heaton*, 297 F.3d 416, 426 (5th Cir. 2002) (citing *FDIC v. Loyd*, 955 F.2d 316 (5th Cir. 1992)); *see also Phipps v. FDIC,* 417 F.3d 1006, 1009 n. 2 (8th Cir. 2005). Under *Heaton*, when a court permits the FDIC to intervene, it essentially moots pending motions to remand. *See Heaton*, 297 F.3d at 421. The Fifth Circuit reasoned that this approach comported with "the broad jurisdictional grant in § 18189(b)(2)(A)." *Id.* at 426.

The Sixth Circuit, in *Village of Oakwood v. State Bank and Trust Company*, arrived at a contrary conclusion. Explicitly declining to follow *Heaton*, the Sixth Circuit held that § 1819(b)(2) did not override the longstanding rule that "intervention requires an existing claim within the court's jurisdiction," such that "the FDIC's intervention cannot create jurisdiction were none existed." 481 F.3d 364, 368 (6th Cir. 2006). Although jurisdiction is a threshold matter even in the Fifth Circuit, the *Heaton* court cursorily justified its divergence from the rule

by noting that "the propriety of intervention" in *Heaton* was "intertwined with subject matter jurisdiction." 297 F.3d at 421 (citing *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1202 (5th Cir. 1992)).

Like most other circuits, the Seventh Circuit recognizes that intervention cannot create subject matter jurisdiction where none originally exists. *See Hofheimer v. McIntee*, 179 F.2d 789, 792 (7th Cir. 1950), *cert. denied*, 71 S.Ct. 47 ("An existing suit within the court's jurisdiction is a prerequisite of an intervention, which is an ancillary proceeding in an already instituted suit.") (quoting *Kendrick v. Kendrick*, 16 F.2d 744, 745 (5th Cir. 1927)); 7C C. Wright, A. Miller, & M. Kane, Fed. Prac. & Proc. Civ. § 1917 (3d ed. 2010) ("Intervention cannot cure any jurisdictional defect that would have barred the federal court from hearing the original action."); *accord Village of Oakwood*, 481 F.3d at 367 (listing cases from other circuits). In the Seventh Circuit, jurisdiction must be analyzed at the time of removal – that is, when the case first appears in federal court. *Hukic v. Aurora Loan Services*, 588 F.3d 420, 427 (7th Cir. 2009).

In the instant case, no independent basis for federal jurisdiction existed at the time of removal. Notably, the FDIC was not yet a party to the lawsuit and no federal question appears on the face of Plaintiffs' well-pleaded complaint. *See Nelson v. Stewart*, 422 F.3d 463, 466 (7th Cir. 2005). A federal question only emerges in the form of a defense raised as grounds for dismissal. Even though FIRREA in all probability prevents Plaintiffs from raising their claims, that fact cannot alone suffice to support federal subject matter jurisdiction. *See, e.g. In re Repository Technologies, Inc.*, 601 F.3d 710, 723 (7th Cir. 2010) ("Absent complete preemption, a defense that relies on 'the pre-emptive effect of a federal statute' does not provide a basis for removal.") (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003)).[1]

---

[1] Defendants and the FDIC do not benefit from the doctrine of complete preemption, the lone exception to the well-pleaded complaint rule. To date, the Supreme Court has only recognized three federal statutes that completely pre-

The Court finds nothing in the language of § 1819(b)(2) to indicate that it contravenes the rule requiring jurisdictional matters to be resolved before motions to intervene. Moreover, the Court is unaware of precedent in this circuit that supports reversing the order of analysis where intervention and subject matter jurisdiction are "intertwined," as the Fifth Circuit holds. The Court thus favors the position of the Sixth Circuit and reads § 1819(b)(2)(A) to comply with the existing rule against intervention creating jurisdiction.

The FDIC argues that the instant case is distinguishable from *Village of Oakwood* because, in that case, the FDIC removed the state action while its motion to intervene was still pending in Ohio court. Here, the FDIC alleges that the instant case was removed before the FDIC had the opportunity to intervene in Illinois court. The Court fails to see a substantive distinction between a case that has been removed before the resolution of a motion to intervene, and one that has been removed before the filing of a motion to intervene. If anything, the FDIC's argument for jurisdiction on the basis if § 1819(b)(2)(A) is weaker in the latter scenario.[2] Moreover, it is not clear what prevented the FDIC from moving to intervene in state court. While some Defendants have alleged insufficient service of process, Defendant Saphir removed the case almost two months after the complaint was originally filed. Finally, remand does not prevent the FDIC from moving to intervene once this case returns to state court. Once a party to the litigation, the FDIC can legitimately remove to federal court pursuant to § 1819 (b)(2)(B).

---

empt state law actions; FIRREA is not among them. *See Repository Technologies*, 601 F.3d at 723. The Seventh Circuit narrowly applies the doctrine when a federal cause of action includes the same elements as a state law claim, provides some recovery, and "Congress clearly intended completely to replace state law with federal law and create a federal forum." *Id*. This is not the case with FIRREA.

[2] In the Fifth Circuit, the FDIC qualifies as a "party" to a lawsuit for the purposes of § 1819(b)(2)(A) as soon as it makes some appearance in court or files a motion to intervene. *FDIC v. Loyd*, 955 D.2d 316 (5th Cir. 1992). While stopping short of adopting this position, the Sixth Circuit has noted that "a federal court might adopt its own view of what constitutes a "party" for the purposes of § 1819(b)(2)." *Village of Oakwood*, 481 F.3d at 369. It bears noting that in the Seventh Circuit, the FDIC's status as receiver of a named party does not, without more, grant it "party" status. *Buczkowski v. FDIC*, 415 F.3d 594, 596 (7th Cir. 2005); *see also Hukic*, 588 F.3d at 428-29.

Although this detour comes at the unfortunate cost of judicial economy, the Court cannot overlook jurisdictional defects for the sake of efficiency.

## IV.    Conclusion

For the foregoing reasons, the Court finds that it was without jurisdiction to grant the FDIC's motion to intervene or reach the merits of the parties' arguments regarding dismissal. Plaintiffs' motion to remand is GRANTED.  Defendants' motions to dismiss are DENIED as MOOT.  This case is REMANDED.

Enter:

/s/ David H. Coar
_____

David H. Coar
United States District Judge

Dated: November 18, 2010